STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
JOHN J. KUCERA (Cal. Bar No. 274184)
Assistant United States Attorney
Asset Forfeiture Section
VICKI CHOU (Cal. Bar No. 248598)
Assistant United States Attorney
OCDETF Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3391/8692
    Facsimile:  (213) 894-0141
    E-mail:    John.Kucera@usdoj.gov
            Vicki.Chou@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 14-499-PA |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| XILIN CHEN, | |
| Defendant. | |

    1.    This constitutes the plea agreement between Xilin Chen ("defendant") and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

    2.    Defendant understands and agrees that this Agreement is part of a "package deal" in which the disposition of the case against defendant is tied to and conditioned on the disposition of cases

against the two other defendants, namely, Chuang Feng Chen and Aixia Chen. Accordingly, defendant and the USAO agree that this Agreement and the obligations it creates will not become binding on the USAO and defendant unless and until by no later than May 29, 2015 or the earliest date set by the Court for entry of the guilty pleas: (a) defendant executes this Agreement and enters guilty pleas in accordance with this Agreement; and (b) Chuang Feng Chen and Aixia Chen each execute their plea and/or civil agreements with the USAO and enter guilty pleas and/or other obligations in accordance with those agreements. Defendant acknowledges that defendant has discussed with defendant's attorney, and carefully considered, the possible advantages and disadvantages to defendant of entering into this Agreement as part of the package deal; defendant is entering into this Agreement as part of the package deal freely and voluntarily because defendant believes this Agreement and the package deal to be in defendant's best interests; and defendant is not entering into this Agreement as part of the package deal because of threats, coercion, or other undue influence by the USAO or by the other defendants who are part of the package deal, their counsel, or anyone acting on their behalf.

DEFENDANT'S OBLIGATIONS

3. Defendant agrees to:

a. Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to each count of a three-count information in the form attached to this Agreement as Exhibit A or a substantially similar form, which charges defendant with the Passing False Papers Through Customhouse in violation of 18 U.S.C. § 545;

2

1   Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C.

2   § 1956(h); and Unlawful Procurement of Citizenship in violation of 18

3   U.S.C. § 1425.

4           b.   Not contest facts agreed to in this agreement.

5           c.   Abide by all agreements regarding sentencing contained

6   in this agreement.

7           d.   Appear for all court appearances, surrender as ordered

8   for service of sentence, obey all conditions of any bond, and obey

9   any other ongoing court order in this matter.

10          e.   Not commit any crime; however, offenses that would be

11  excluded for sentencing purposes under United States Sentencing

12  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

13  within the scope of this agreement.

14          f.   Be truthful at all times with Pretrial Services, the

15  United States Probation Office, and the Court.

16          g.   Pay the applicable special assessment at or before the

17  time of sentencing unless defendant lacks the ability to pay and

18  prior to sentencing submits a completed financial statement on a form

19  to be provided by the USAO.

20                  FORFEITURE AND FINANCIAL ACCOUNTABILITY

21      4.   Defendant further agrees:

22          a.   Truthfully to disclose to law enforcement officials,

23  at a date and time to be set by the USAO, the location of,

24  defendant's ownership interest in, and all other information known to

25  defendant about, all monies, properties, and/or assets of any kind,

26  derived from or acquired as a result of, or used to facilitate the

27  commission of, defendant's illegal activities, and to forfeit all

28  right, title, and interest in and to such items, specifically

including all right, title, and interest in and to all United States currency, property and assets, including but not limited to the following assets which defendant admits constitute, and are derived from, the proceeds of defendant's illegal conspiracy to violate 18 U.S.C. § 545:

i. Proceeds from the sale of Real property located at 423 Stanford Ave., Los Angeles, California 90013-2120, Assessor's Parcel No. 5147-010-028, more particularly described as:

Lot 32, 33, 34, 35 and 36 in Block 10 of the Wolfskill Orchard Tract, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 30 Page 9 et seq., of Miscellaneous Records in the office of the County Recorder of said County.

ii. Proceeds from the sale of Real property located at 5937 Loma Ave., Temple City, California 91780-1924, Assessor's Parcel No. 5384-014-027, more particularly described as:

Lot 354 of Tract 5904, in the City of TEMPLE CITY, County of Los Angeles, State of California, as per Map recorded in Book 80, Pages 74 and 75 of Maps, in the Office of the County Recorder of said County.

iii. Proceeds from the sale of Real property located at 10521 Freer St., Temple City, California 91780-3446, Assessor's Parcel No. 8585-021-052, more particularly described as:

Parcel 1 of Parcel Map No. 61450, in the City of TEMPLE CITY, County of Los Angeles, State of California, as per Map recorded in Book 365, Pages 22 and 23 of Parcel Maps, in the Office of the County Recorder of said County.

iv. Approximately $358,832.52 in Bank Funds seized on or about September 10, 2014, from Bank of America;

v. Approximately $3,200.00 in United States Currency seized on or about September 10, 2014, from 5937 Loma Ave., Temple City, California 91780-1924; and

1              vi.   Approximately $74,202.00 in United States

2    Currency seized on or about September 10, 2014, from 423 Stanford

3    Ave., Los Angeles, California 90013-2120.

4         b.   To the Court's entry of an order of forfeiture at or

5    before sentencing with respect to these assets and to the forfeiture

6    of the assets.

7         c.   To take whatever steps are necessary to pass to the

8    United States clear title to the assets described above, including,

9    without limitation, the execution of a consent decree of forfeiture

10   and the completing of any other legal documents required for the

11   transfer of title to the United States.

12        d.   Not to contest any administrative forfeiture

13   proceedings or civil judicial proceedings, pursuant to 18 U.S.C. §§

14   981, 982, and 21 U.S.C. § 853(p), or other relevant statute,

15   commenced against any of the assets specifically described herein, or

16   against any other assets or properties defendant discloses as a

17   result of his obligation to disclose all assets described herein.

18   With respect to any criminal forfeiture ordered as a result of this

19   plea agreement, defendant waives the requirements of Federal Rules of

20   Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture

21   in the charging instrument, announcement of the forfeiture at

22   sentencing, and incorporation of the forfeiture in the judgment.

23   Defendant acknowledges that any criminal forfeiture of assets is part

24   of the sentence that may be imposed in this case and waives any

25   failure by the Court to advise defendant of this, pursuant to Federal

26   Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts

27   defendant's guilty plea.

28   //

1        e.   Not to assist any other individual in any effort

2   falsely to contest the forfeiture of the assets described above.

3        f.   Not to claim that reasonable cause to seize the assets

4   was lacking.

5        g.   To prevent the transfer, sale, destruction, or loss of

6   any and all assets described above to the extent defendant has the

7   ability to do so.

8        h.   To fill out and deliver to the USAO a completed

9   financial statement listing defendant's assets on a form provided by

10  the USAO.

11       i.   That forfeiture of assets described above shall not be

12  counted toward satisfaction of any special assessment, fine,

13  restitution, costs, or other penalty the Court may impose.  However,

14  should any restitution ever be required of defendant as a result of

15  the conduct described herein, the government agrees to recommend that

16  such restitution be offset to the same extent as the forfeiture

17  ordered at sentencing.

18                       THE USAO'S OBLIGATIONS

19  5.   The USAO agrees to:

20       a.   Not contest facts agreed to in this agreement.

21       b.   Abide by all agreements regarding sentencing contained

22  in this agreement.

23       c.   At the time of sentencing, move to dismiss the

24  remaining indictment in United States v. Chuang Feng Chen, et al., CR

25  No. 14-499-PA, as against defendant.  Defendant agrees, however, that

26  at the time of sentencing the Court may consider any dismissed

27  charges in determining the applicable Sentencing Guidelines range,

28

the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 541, 542, 545, or 1956 arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 15 below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

f.   If the guidelines range recommended by the USAO at the time of sentencing is within or below Zone C, recommend that defendant be sentenced to no term of imprisonment, although the USAO may seek a term of home confinement of up to 12 months.

//

//

7

NATURE OF THE OFFENSE

6.   Defendant understands that for defendant to be guilty of the crime charged in count one of the information, that is, Passing False Papers Through Customhouse in violation of 18 U.S.C. § 545, the following must be true:

a.   Defendant knowingly caused to be passed a false Customs and Border Protection Form 7501 Entry Summary ("Form 7501") through a customhouse of the United States;

b.   Defendant knew that the Form 7501 was false;

c.   Defendant acted willfully with intent to defraud the United States; and

d.   The false Form 7501 caused to be submitted by defendant had a natural tendency to influence, or was capable of influencing, action by the United States.

7.   Defendant understands that for defendant to be guilty of the crime charged in count two of the information, that is Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h), the following must be true:

a.   First, beginning on or before September 24, 2012, and continuing until on or about September 10, 2013, there was an agreement between defendant and one or more other persons to launder monetary instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i);

b.   Second, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

8.   Defendant understands that the elements of laundering monetary instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) are:

a.   First, defendant conducted or intended to conduct a

8

financial transaction involving property that represented the proceeds of specified unlawful activity, specifically, Passing False Papers Through Customhouse, in violation of 18 U.S.C. § 545, or Distribution of Controlled Substances, in violation of 21 U.S.C. § 841;

b.    Second, defendant knew that the property involved in the financial transaction represented the proceeds of activity that constitutes a felony under State, Federal, or foreign law; and

c.    Third, defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

9.    Defendant further understands that he also can be found guilty of the crime charged in count two of the information, that is Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h), if defendant acted with deliberate ignorance with respect to the source of the proceeds, namely that:

a.    First, defendant was aware of a high probability that the source of the bulk cash he received was proceeds of some form of felonious unlawful activity, for example, drug trafficking; and

b.    Second, deliberately avoided learning the truth

10.   Defendant understands that for defendant to be guilty of the crime charged in count three of the information, that is, the Unlawful Procurement of Citizenship in violation of 18 U.S.C. § 1425, the following must be true:

a.    Defendant knowingly procured naturalization;

//

//

1          b.   Defendant knowingly made a misrepresentation on, or
2    omitted material information from, his naturalization application;
3    and

4          c.   Defendant's misrepresentation or omission was
5    material.

6                              PENALTIES

7    11.   Defendant understands the following:

8          a.   The statutory maximum sentence that the Court can
9    impose for a violation of Title 18, United States Code, Section 545,
10   is 20 years' imprisonment, a 3-year period of supervised release, a
11   fine of $250,000.00 or twice the gross gain or gross loss resulting
12   from the offense, whichever is greatest, and a mandatory special
13   assessment of $100;

14         b.   The statutory maximum sentence that the Court can
15   impose for a violation of Title 18, United States Code, Section 1956,
16   is 10 years' imprisonment, a 3-year period of supervised release, a
17   fine of $250,000.00 or twice the gross gain or gross loss resulting
18   from the offense, whichever is greatest, and a mandatory special
19   assessment of $100; and

20         c.   The statutory maximum sentence that the Court can
21   impose for a violation of Title 18, United States Code, Section 1425
22   is 20 years' imprisonment, a 3-year period of supervised release, a
23   fine of $250,000.00 or twice the gross gain or gross loss resulting
24   from the offense, whichever is greatest, and a mandatory special
25   assessment of $100.

26   12.   Defendant understands, therefore, that the total maximum
27   sentence for all offenses to which defendant is pleading guilty is:
28   50 years' imprisonment; a 3-year period of supervised release; a fine

1  of $750,000.00 or twice the gross gain or gross loss resulting from

2  the offenses, whichever is greatest; and a mandatory special

3  assessment of $100.

4      13.   Certain assets, as described above, or substitute assets up

5  to the value of such assets, will be subject to criminal forfeiture,

6  administrative forfeiture proceedings, or civil judicial proceedings,

7  pursuant to 18 U.S.C. §§ 981, 982, and 21 U.S.C. § 853(p), or other

8  relevant statute

9      14.   Defendant understands that supervised release is a period

10  of time following imprisonment during which defendant will be subject

11  to various restrictions and requirements.  Defendant understands that

12  if defendant violates one or more of the conditions of any supervised

13  release imposed, defendant may be returned to prison for all or part

14  of the term of supervised release authorized by statute for the

15  offense that resulted in the term of supervised release, which could

16  result in defendant serving a total term of imprisonment greater than

17  the statutory maximum stated above.

18      15.   Defendant understands that, by pleading guilty, defendant

19  may be giving up valuable government benefits and valuable civic

20  rights, such as the right to vote, the right to possess a firearm,

21  the right to hold office, and the right to serve on a jury.

22  Defendant understands that once the court accepts defendant's guilty

23  plea, it will be a federal felony for defendant to possess a firearm

24  or ammunition.  Defendant understands that the conviction in this

25  case may also subject defendant to various other collateral

26  consequences, including but not limited to revocation of probation,

27  parole, or supervised release in another case and suspension or

28  revocation of a professional license.  Defendant understands that

1  unanticipated collateral consequences will not serve as grounds to

2  withdraw defendant's guilty plea.

3      16.   Defendant understands that the felony convictions in this

4  case may subject defendant to: removal, also known as deportation,

5  which may, under some circumstances, be mandatory; denial of

6  citizenship; and denial of admission to the United States in the

7  future.  The court cannot, and defendant's attorney also may not be

8  able to, advise defendant fully regarding the immigration

9  consequences of the felony conviction in this case.  Defendant

10  understands that unexpected immigration consequences will not serve

11  as grounds to withdraw defendant's guilty plea.

12                          FACTUAL BASIS

13      17.   Defendant admits that defendant is, in fact, guilty of the

14  offense to which defendant is agreeing to plead guilty.  Defendant

15  and the USAO agree to the statement of facts provided below and agree

16  that this statement of facts is sufficient to support a plea of

17  guilty to the charge described in this agreement and to establish the

18  Sentencing Guidelines factors set forth in paragraph 16 below but is

19  not meant to be a complete recitation of all facts relevant to the

20  underlying criminal conduct or all facts known to either party that

21  relate to that conduct.

22      18 U.S.C. § 545

23      On or about September 24, 2012, in Los Angeles, California,

24  defendant, intending to defraud the United States, knowingly made out

25  and submitted to a customhouse of the United States a false Customs

26  and Border Protection Form 7501 Entry Summary ("Form 7501") that

27  stated the total value of merchandise imported from the People's

28  Republic of China ("China") to be approximately $86,635.00, while in

1  truth and fact, as defendant well knew, the actual value of the
2  imported merchandise was approximately $175,535.56.  By submitting
3  this false Form 7501 to the United States customhouse, defendant
4  intended to cause, and did cause, the imported merchandise to be
5  released into the commerce of the United States on or about September
6  27, 2012.

7      18 U.S.C. § 1956(h)

8      Beginning on a date prior to September 24, 2012, and continuing
9  through on or about September 10, 2014, in Los Angeles County,
10 California, and elsewhere, defendant and at least one other
11 individual agreed to engage in the following criminal scheme:
12 defendant and others acting in concert with defendant would
13 intentionally defraud the United States by submitting to United
14 States customhouses false Customs and Border Protection Form 7501
15 Entry Summaries that undervalued the merchandise imported into the
16 United States in order to defraud the United States out of the proper
17 duty owed on such imported merchandise.  Once defendant and others
18 acting in concert with defendant paid less than the proper import
19 duty on imported merchandise, the merchandise would be sold from
20 wholesale businesses owned or controlled by defendant and his co-
21 conspirators.  Because defendant and his co-conspirators had
22 defrauded the United States out of the proper duty owed, such
23 imported merchandise would be sold at prices below that at which the
24 merchandise would have sold had defendant paid the true and correct
25 duty owed.  Following these sales, defendant, and others acting in
26 concert with defendant, intending to conceal and disguise the nature,
27 source, and control of the proceeds of their fraudulent scheme, would
28 then deposit into several federally insured financial institutions

1 the proceeds of these sales.  Thereafter, further intending to

2 conceal and disguise the nature, source, and control of the proceeds

3 of their fraudulent scheme, defendant and his co-conspirators would

4 electronically wire-transfer to China some or all of the proceeds

5 that they had deposited into their accounts at the financial

6 institutions.  Further intending to conceal the nature, source, and

7 control of the proceeds of their fraudulent scheme, and in order to

8 perpetuate their fraudulent scheme, defendant and his co-conspirators

9 would use portions of the proceeds from their fraudulent scheme to

10 purchase additional merchandise in China, which they would then

11 import into the United States using the same duty undervaluation

12 scheme.

13     On three separate occasions, an undercover agent met with

14 defendant while the undercover agent posed as an individual seeking

15 to use the proceeds of narcotics trafficking to purchase merchandise

16 from defendant for shipment to Mexico.  Acting in this undercover

17 capacity on these three occasions, the agent used large sums of cash

18 to make purchases from defendant, represented that only cash could be

19 used for the purchases, brought the cash used for the transactions

20 packaged in plastic-wrap and concealed in duffle bags, and the agent

21 accepted from defendant multiple invoices for each transaction.

22     On September 18, 2013, the date of the third and final

23 transaction, defendant agreed to sell $10,625 worth of merchandise to

24 the undercover agent.  On this occasion, notwithstanding that

25 defendant had no role in actually handling or dealing in narcotics,

26 defendant knew of sufficient indicia of unlawful activity in and

27 around defendant's place of business such that defendant was aware,

28 or should have been aware, of a high probability that defendant's

14

transaction with the undercover agent related to the proceeds of
narcotics trafficking.  Being aware of these indicia and this high
probability, defendant should have known that the cash used to
purchase the merchandise was the proceeds of narcotics trafficking,
but defendant deliberately avoided asking questions or confirming the
truth.  In completing this transaction with the undercover agent, and
to conceal the source, ownership, and control of the $10,625 in cash,
defendant agreed and directed another to write two invoices for the
undercover agent, each for under $10,000.

## 18 U.S.C. § 1425

On or about November 20, 2012, in Los Angeles County, defendant
knowingly procured and attempted to procure, contrary to law, his
United States citizenship naturalization, by making the following
false material statement, which he knew to be false when made: that
defendant had never committed a crime or offense for which he had not
been arrested, when, in fact, as defendant well knew, he had
committed such a crime and offense, including, Conspiracy to Launder
Monetary Instruments, in violation of 18 U.S.C. § 1956(h), and the
Passing False Papers Through Customhouse, in violation of 18 U.S.C.
§ 545.

### SENTENCING FACTORS

18.  Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures
under the Sentencing Guidelines, and the other sentencing factors set
forth in 18 U.S.C. § 3553(a).  Defendant understands that the
Sentencing Guidelines are advisory only, that defendant cannot have
any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the

Sentencing Guidelines and the other § 3553(a) factors, the Court will

be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crime of

conviction.

19.   Defendant and the USAO agree to the following applicable

Sentencing Guidelines factors:

Count 1:  18 U.S.C. § 545

Base Offense Level:
[Loss Amount Greater
Than $80,000.00]              [16]      [U.S.S.G. §§ 2T3.1, 2T4.1(F)]

Acceptance of Responsibility: [-3]      [U.S.S.G. § 3E1.1(a),(b)]

Total Offense Level:          [13]


Count 2:  18 U.S.C. § 1956(h)

*For laundering of proceeds of violations of 18 U.S.C. § 545:*

Base Offense Level:           [16]      [U.S.S.G. §2 S1.1(a)(1)]
 Convicted Under § 1956       [+2]      [U.S.S.G. §2 S1.1(b)(2)(B)]

Acceptance of Responsibility: [-3]      [U.S.S.G. § 3E1.1(b)]
Total Offense Level:          [15]


*For laundering of proceeds of violations of 21 U.S.C. § 841*

Base Offense Level:           [12]      [U.S.S.G. § 2S1.1(a)(2)]

 Believed proceeds from
 trafficking of controlled
 substance                    [+6]      [U.S.S.G. § 2S1.1(b)(1)

 Convicted Under § 1956       [+2]      [U.S.S.G. § 2S1.1(b)(2)(B)]

Acceptance of Responsibility: [-3]      [U.S.S.G. § 3E1.1(b)]

Total Offense Level:          [17]

Count 3:  18 U.S.C. § 1425

Base Offense Level:           [11]      [U.S.S.G. §2L2.1(a)]

16

| | | |
|---|---|---|
| 1 | Not for Profit | [-3] | [U.S.S.G. §2L2.1(b)] |
| 2 | Acceptance of Responsibility: | [-2] | [U.S.S.G. §3E1.1(a)] |
| 3 | Total Offense Level: | [6] | |

4   The USAO will agree to a two-level downward adjustment for
5 acceptance of responsibility (and, if applicable, move for an
6 additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))
7 only if the conditions set forth in paragraph 5(d) are met.  Subject
8 to paragraph 30 below, the USAO agrees not to seek, argue, or suggest
9 in any way, either orally or in writing, that any other specific
10 offense characteristics, adjustments, or departures relating to the
11 offense level be imposed.  Defendant agrees, however, that if, after
12 signing this agreement but prior to sentencing, defendant were to
13 commit an act, or the USAO were to discover a previously undiscovered
14 act committed by defendant prior to signing this agreement, which
15 act, in the judgment of the USAO, constituted obstruction of justice
16 within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to
17 seek the enhancement set forth in that section.  Defendant
18 understands that there is no agreement as to defendant's criminal
19 history or criminal history category.

20   20.  Defendant and the USAO reserve the right to argue for a
21 sentence outside the sentencing range established by the Sentencing
22 Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
23 (a)(2), (a)(3), (a)(6), and (a)(7).

24 <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

25   21.  Defendant understands that by pleading guilty, defendant
26 gives up the following rights:

27     a.   The right to persist in a plea of not guilty.

28     b.   The right to a speedy and public trial by jury.

1    c.    The right to be represented by counsel – and if

2    necessary have the court appoint counsel - at trial.  Defendant

3    understands, however, that, defendant retains the right to be

4    represented by counsel – and if necessary have the court appoint

5    counsel – at every other stage of the proceeding.

6    d.    The right to be presumed innocent and to have the

7    burden of proof placed on the government to prove defendant guilty

8    beyond a reasonable doubt.

9    e.    The right to confront and cross-examine witnesses

10   against defendant.

11   f.    The right to testify and to present evidence in

12   opposition to the charges, including the right to compel the

13   attendance of witnesses to testify.

14   g.    The right not to be compelled to testify, and, if

15   defendant chose not to testify or present evidence, to have that

16   choice not be used against defendant.

17   h.    Any and all rights to pursue any affirmative defenses,

18   Fourth Amendment or Fifth Amendment claims, and other pretrial

19   motions that have been filed or could be filed.

20                    WAIVER OF APPEAL OF CONVICTION

21        22.  Defendant understands that, with the exception of an appeal

22   based on a claim that defendant's guilty plea was involuntary, by

23   pleading guilty defendant is waiving and giving up any right to

24   appeal defendant's conviction on the offense to which defendant is

25   pleading guilty.

26              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

27        23.  Defendant agrees that, provided the Court imposes no term

28   of imprisonment and no more than 12 months' home confinement,

                                    18

1  defendant gives up the right to appeal all of the following: (a) the

2  procedures and calculations used to determine and impose any portion

3  of the sentence; (b) the term of imprisonment imposed by the Court;

4  (c) the fine imposed by the court, provided it is within the

5  statutory maximum; (d) the term of probation or supervised release

6  imposed by the Court, provided it is within the statutory maximum;

7  and (e) any of the following conditions of probation or supervised

8  release imposed by the Court: the conditions set forth in General

9  Orders 318, 01-05, and/or 05-02 of this Court; the drug testing

10 conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

11 alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

12     24.  The USAO agrees that, provided all portions of the sentence

13 are at or below the statutory maximum specified above, the USAO gives

14 up its right to appeal any portion of the sentence.

15                    RESULT OF WITHDRAWAL OF GUILTY PLEA

16     25.  Defendant agrees that if, after entering a guilty plea

17 pursuant to this agreement, defendant seeks to withdraw and succeeds

18 in withdrawing defendant's guilty plea on any basis other than a

19 claim and finding that entry into this plea agreement was

20 involuntary, then (a) the USAO will be relieved of all of its

21 obligations under this agreement, and (b) should the USAO choose to

22 pursue any charge that was either dismissed or not filed as a result

23 of this agreement, then (i) any applicable statute of limitations

24 will be tolled between the date of defendant's signing of this

25 agreement and the filing commencing any such action; and

26 (ii) defendant waives and gives up all defenses based on the statute

27 of limitations, any claim of pre-indictment delay, or any speedy

28 trial claim with respect to any such action, except to the extent

1  that such defenses existed as of the date of defendant's signing this

2  agreement.

EFFECTIVE DATE OF AGREEMENT

4      26.   This agreement is effective upon signature and execution of

5  all required certifications by defendant, defendant's counsel, and an

6  Assistant United States Attorney.

BREACH OF AGREEMENT

8      27.   Defendant agrees that if defendant, at any time after the

9  signature of this agreement and execution of all required

10  certifications by defendant, defendant's counsel, and an Assistant

11  United States Attorney, knowingly violates or fails to perform any of

12  defendant's obligations under this agreement ("a breach"), the USAO

13  may declare this agreement breached.  All of defendant's obligations

14  are material, a single breach of this agreement is sufficient for the

15  USAO to declare a breach, and defendant shall not be deemed to have

16  cured a breach without the express agreement of the USAO in writing.

17  If the USAO declares this agreement breached, and the Court finds

18  such a breach to have occurred, then: (a) if defendant has previously

19  entered a guilty plea pursuant to this agreement, defendant will not

20  be able to withdraw the guilty plea, and (b) the USAO will be

21  relieved of all its obligations under this agreement.

22      28.   Following the Court's finding of a knowing breach of this

23  agreement by defendant, should the USAO choose to pursue any charge

24  that was either dismissed or not filed as a result of this agreement,

25  then:

26          a.   Defendant agrees that any applicable statute of

27  limitations is tolled between the date of defendant's signing of this

28  agreement and the filing commencing any such action.

1          b.    Defendant waives and gives up all defenses based on

2    the statute of limitations, any claim of pre-indictment delay, or any

3    speedy trial claim with respect to any such action, except to the

4    extent that such defenses existed as of the date of defendant's

5    signing this agreement.

6                   RESULT OF VACATUR, REVERSAL OR SET-ASIDE

7          29.   Defendant agrees that if the count of conviction is

8    vacated, reversed, or set aside, both the USAO and defendant will be

9    released from all their obligations under this agreement.

10                 COURT AND PROBATION OFFICE NOT PARTIES

11         30.   Defendant understands that the Court and the United States

12   Probation Office are not parties to this agreement and need not

13   accept any of the USAO's sentencing recommendations or the parties'

14   agreements to facts or sentencing factors.

15         31.   Defendant understands that both defendant and the USAO are

16   free to: (a) supplement the facts by supplying relevant information

17   to the United States Probation Office and the Court, (b) correct any

18   and all factual misstatements relating to the Court's Sentencing

19   Guidelines calculations and determination of sentence, and (c) argue

20   on appeal and collateral review that the Court's Sentencing

21   Guidelines calculations and the sentence it chooses to impose are not

22   error, although each party agrees to maintain its view that the

23   calculations in paragraph 16 are consistent with the facts of this

24   case.  While this paragraph permits both the USAO and defendant to

25   submit full and complete factual information to the United States

26   Probation Office and the Court, even if that factual information may

27   be viewed as inconsistent with the facts agreed to in this agreement,

28

this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

32.    Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

33.    Defendant understands that, except as set forth in any other signed agreements filed with the Court, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

34.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

STEPHANIE YONEKURA
Acting United States Attorney


_____          _5/26/15_____
JOHN KUCERA                               Date
VICKI CHOU
Assistant United States Attorneys


_Xi LiN CHON_____               _5/25/15_____
XILIN CHEN                                Date
Defendant


_____          _5/25/15_____
REUVEN COHEN                              Date
Attorney for Defendant
Xilin Chen



CERTIFICATION OF DEFENDANT

This agreement has been read to me in Chinese, the language I understand best.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant

23

1   Sentencing Guidelines provisions, and of the consequences of entering
2   into this agreement.  No promises, inducements, or representations of
3   any kind have been made to me other than those contained in this
4   agreement.  No one has threatened or forced me in any way to enter
5   into this agreement.  I am satisfied with the representation of my
6   attorney in this matter, and I am pleading guilty because I am guilty
7   of the charges and wish to take advantage of the promises set forth
8   in this agreement, and not for any other reason.

9   XI LIN CHEN                                    5/25/15
10  XILIN CHEN                                     Date
    Defendant

11

12                    CERTIFICATION OF INTERPRETER
13       I, _____BILLY LEE_____, am fluent in the written and spoken
14  English and Chinese languages.  I accurately translated this entire
15  agreement from English into Chinese to defendant Xilin Chen on this
16  date.

17  _____          5 - 25 - 2015
18  INTERPRETER                              Date

19             CERTIFICATION OF DEFENDANT'S ATTORNEY
20       I am Xilin Chen's attorney.  I have carefully and thoroughly
21  discussed every part of this agreement with my client.  Further, I
22  have fully advised my client of his rights, of possible pretrial
23  motions that might be filed, of possible defenses that might be
24  asserted either prior to or at trial, of the sentencing factors set
25  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
26  provisions, and of the consequences of entering into this agreement.
27  To my knowledge: no promises, inducements, or representations of any
28  kind have been made to my client other than those contained in this

                                24

1  agreement; no one has threatened or forced my client in any way to

2  enter into this agreement; my client's decision to enter into this

3  agreement is an informed and voluntary one; and the factual basis set

4  forth in this agreement is sufficient to support my client's entry of

5  a guilty plea pursuant to this agreement.

6

7  REUVEN COHEN                                    5/25/15
   Attorney for Defendant                          Date
8  Xilin Chen

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28