NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
VICKI CHOU (Cal. Bar No. 248598)
Assistant United States Attorney
Acting Deputy Chief, General Crimes Section
JOHN J. KUCERA (Cal. Bar No. 274184)
Assistant United States Attorney
Asset Forfeiture Section
          1200/1400 United States Courthouse
          312 North Spring Street
          Los Angeles, California 90012
          Telephone: (213) 894-8692/3391
          Facsimile: (213) 894-0141
          E-mail:   Vicki.Chou@usdoj.gov
                    John.Kucera@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 14-00499-PA |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO WITHDRAW HIS PLEA OF GUILTY TO COUNT THREE OF FIRST SUPERSEDING INFORMATION |
| v. | |
| XILIN CHEN, | |
| Defendant. | |

        Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Vicki Chou and John Kucera, hereby files this Opposition to the Motion by Defendant, Xilin Chen ("defendant"), to withdraw his plea of guilty as to Count Three of the First Superseding Information.  (Dkt. 229.)

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

As of the time of the filing of this Opposition, the government still has not received the transcript of defendant's change of plea proceeding from the court reporter.[1]  Government counsel left a message for the court reporter at 10:00 a.m. and for her supervisor at 10:42 a.m. and has not heard back from either party.  So as not to delay the briefing any further, the government is submitting a version of the brief based on government counsel's recollection of the plea colloquy and will supplement with a summary of the proceedings after the transcript has been provided to government counsel.

Dated: April 11, 2018         Respectfully submitted,

                             NICOLA T. HANNA
                             United States Attorney

                             LAWRENCE S. MIDDLETON
                             Assistant United States Attorney
                             Chief, Criminal Division


                                       /s/
                             _____
                             VICKI CHOU
                             JOHN J. KUCERA
                             Assistant United States Attorneys

                             Attorneys for Plaintiff
                             UNITED STATES OF AMERICA

---

[1] As detailed in the parties' Stipulation to Extend Briefing Deadline on Defendant's Motion to Withdraw Plea to Count Three of the First Superseding Information (Dkt. 242), the court reporter had indicated that she would provide the transcript to the government on April 10, 2018.

2

**TABLE OF CONTENTS**

Page

Table of Authorities..............................................ii

I.    INTRODUCTION.................................................1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY....................2

      A.   Charges and Plea Negotiations..........................2

      B.   Defendant's Plea Agreement.............................3

      C.   Defendant's Change of Plea Hearing.....................6

III.  ARGUMENT....................................................6

      A.   Defendant Has No Basis Under Maslenjak To Withdraw His
           Guilty Plea............................................6

           1.   The Ninth Circuit Requires Marked Shift In Law To
                Allow Withdrawal Of A Guilty Plea.................7

           2.   Maslenjak Is Not A Marked Shift in Ninth Circuit
                Law..............................................10

           3.   Maslenjak Does Not Open Any New Arguments For
                Defendant Given His Prior Admissions.............12

      B.   The Record Rebuts Defendant's Claim That His Plea Was
           Not Knowing Or Intelligent............................13

IV.   GOVERNMENT'S POSITIONS SHOULD DEFENDANT PERSIST WITH AND
      PREVAIL ON HIS MOTION......................................15

      A.   Defendant Breaches His Plea Agreement By Asserting
           Facts In His Motion That Contradict Facts Agreed To In
           The Plea Agreement....................................15

      B.   If Defendant Withdraws His Plea, The Government Is
           Relieved Of All Obligations Under the Agreement,
           Including Its Agreements Under The Package Deal.........16

V.    CONCLUSION.................................................19

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

INS v. St. Cyr,

   533 U.S. 289 (2001) ............................................. 9

Maslenjak v. United States,

   137 S. Ct. 1918 (2017) ...................................... passim

United States v. Alferahin,

   433 F.3d 1148 (9th Cir. 2006) ............................... 10, 11

United States v. Carillo,

   709 F.2d 35 (9th Cir. 1983) ...................................... 16

United States v. Ensminger,

   567 F.3d 587 (9th Cir. 2009) ............................... passim

United States v. Krasn,

   614 F.2d 1229 (9th Cir. 1980) .................................... 16

United States v. Latchin,

   554 F.3d 709 (7th Cir. 2009) .................................... 10

United States v. Lo,

   839 F.3d 777 (9th Cir. 2016) .................................... 18

United States v. Maslenjak,

   821 F.3d 675 (6th Cir. 2016) .................................... 10

United States v. McTiernan,

   546 F.3d 1160 (9th Cir. 2008) ................................. 7, 8

United States v. Munyenyezi,

   781 F.3d 532 (1st Cir. 2015) .................................... 10

United States v. Navarro-Botello,

   912 F.2d 318 (9th Cir. 1990) .................................... 18

United States v. Ortega-Ascanio,

  376 F.3d 879 (9th Cir. 2004)................................. 8, 9, 10

United States v. Puerta,

  982 F.2d 1297 (9th Cir. 1992).................................... 11

United States v. Ross,

  511 F.3d 1233 (9th Cir. 2008).................................... 14

United States v. Showalter,

  569 F.3d 1150 (9th Cir. 2009).................................... 7

**FEDERAL STATUTES:**

8 U.S.C. §§ 1101(a)(43)(D)........................................ 12

18 U.S.C. § 545........................................... 3, 4, 12

18 U.S.C. § 1425........................................ 1, 3, 4, 12

18 U.S.C. § 1425(a)..................................... 1, 10, 11

18 U.S.C. § 1956(h)..................................... 3, 4, 12

**STATE STATUTES:**

California Penal Code §243.4...................................... 9

**FEDERAL RULES:**

Fed. R. Crim. P. 11(d)(2)(B)..................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Three and a half years after entering into a complex, package deal negotiated for months between the government and defendant's private, retained counsel and defendant's two separately represented co-defendant adult children, defendant now seeks to have the benefit of his bargain without paying the agreed-upon cost.  Defendant has moved to withdraw his guilty plea to just count three of the First Superseding Information ("FSI"), which charged him with Unlawful Procurement of United States Citizenship, in violation of 18 U.S.C. § 1425.  Defendant's plea to this count, which will result in his denaturalization, was a crucial component to the package deal that included, among other benefits, the government's agreements to dismiss the indictment against defendant's daughter, Aixia Chen, to dismiss the immigration fraud charges against defendant's son, Chuang Feng Chen, and to make a recommendation of no custodial time for defendant if he were to provide sufficient substantial assistance.

Defendant argues that he be allowed to withdraw his plea only as to count three of the FSI because he hopes to keep his unlawfully procured United States citizenship.  He has further fashioned his argument to be based on a lack of voluntariness because he hopes not to trigger the breach provisions of the plea agreement so that he can retain the other benefits of the package deal.  This Court should reject defendant's feint.

First, defendant contends that the Supreme Court's decision in Maslenjak v. United States, 137 S. Ct. 1918 (2017), changes Ninth Circuit law as to 18 U.S.C. § 1425(a), which gives him a fair and just reason for withdrawal.  This argument fails because Maslenjak

does not overrule Ninth Circuit precedent or provide defendant with an argument that was unavailable to him prior to his guilty plea. Second, defendant contends that his guilty plea to count three was not knowing or intelligent.  This argument is directly contradicted by the plea agreement between the parties and defendant's statements at the change of plea hearing.

Defendant should not be permitted to pick and choose between those provisions of the package deal that he now finds most agreeable for his lifestyle.  The Court should deny his motion to withdraw his guilty plea to just count three of the FSI, or, if it allows him to withdraw that plea, declare defendant's plea agreement breached and the package deal unwound.  Defendant's persistence in his motion, contesting facts agreed upon in the plea agreement, is sufficient to for this Court to find that he has breached his plea agreement, even without making further inquiry into whether or not the withdrawal of a plea constitutes a breach.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  Charges and Plea Negotiations

On September 2, 2014, the Grand Jury returned an eight-count indictment against defendant and his two adult children, Chuang Feng Chen and Aixia Chen, charging money laundering and immigration fraud offenses.  (Dkt. 1.)  The indictment alleged, inter alia, that the defendants were engaged in the laundering of drug proceeds and that defendant and Chuang Feng Chen had made false statements in their applications to obtain United States citizenship, concealing their criminal activities.

Thereafter, the government and defendants' private, retained counsel engaged in months of negotiations.  At the end, the parties entered into a complex package deal.  On May 26, 2015, the government filed two-part plea agreements for defendant and co-defendant Chuang Feng Chen.  (Dkts. 101, 102, 110, 111.)  The government also filed a Motion to Dismiss Case as to Aixia Chen (Dkt. 106) with an under seal supplement (Dkt. 132.)  On June 4, 2015, the Court dismissed Aixia Chen from the indictment without prejudice.  (Dkt. 127.)

**B.   Defendant's Plea Agreement**

Defendant's plea agreement required him to plead to each count of a three-count superseding information charging violations of 18 U.S.C. § 545 (Passing False Papers Through a Customhouse), 18 U.S.C. § 1956(h) (Conspiracy to Launder Monetary Instruments), and 18 U.S.C. § 1425 (Unlawful Procurement of United States Citizenship). (Dkt. 101.)  Defendant also agreed to "Not contest facts agreed to in this agreement." (Plea Agreement ¶ 3(b)).  Defendant's plea agreement specified that his plea was part of a "package deal in which the disposition of the case against defendant is tied to and conditioned upon the disposition of cases against the two other defendants, namely, Chuang Feng Chen and Aixia Chen." (Id. ¶ 2.)  Defendant also represented that he was entering into the package deal "freely and voluntarily," and not "because of threats, coercion, or other undue influence." (Id. ¶ 2.)

In exchange, not only did the government agree to the package deal with favorable dispositions for defendant's co-defendant children, it agreed to dismiss the remaining indictment against defendant, not further prosecute defendant for certain violations

3

under Title 18, and, provided "the guidelines range recommended by the USAO at the time of sentencing is within or below Zone C, recommend that defendant be sentenced to no term of imprisonment." (Id. ¶ 5.)

Paragraphs 8-10 of defendant's plea agreement spelled out the elements of the crimes to which defendant was pleading guilty. Paragraph 10 included the Ninth Circuit's elements for Unlawful Procurement of Citizenship, in violation of 18 U.S.C. § 1425, including that defendant (1) knowingly procured naturalization, (2) defendant knowingly made a misrepresentation on his naturalization application, and (3) defendant's misrepresentation was material. (Id. ¶ 10.)

The facts of the offenses that defendant admitted were contained in paragraph 17 of plea agreement, including facts of defendant's customs fraud and money laundering, as well as the following, relevant to defendant's unlawful procurement of citizenship:

> On or about November 20, 2012, in Los Angeles County, defendant knowingly procured and attempted to procure, contrary to law, his United States citizenship naturalization, by making the following false statement, which he knew to be false when made: that defendant had never committed a crime or offense for which he had not been arrested, when, in fact, as defendant well knew, he had committed such a crime and offense, including, Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h) and the Passing False Papers Through Customhouse, in violation of 18 U.S.C. § 545.

(Id. ¶ 17) (emphasis added).

Paragraph 25 of the plea agreement set forth the consequences of defendant's withdrawal of guilty plea, namely that:

> if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was

4

involuntary, then (a) the USAO will be relieved of all of
its obligations under this agreement. . .

(Id. ¶ 25.)

The breach provisions of the plea agreement were contained in
paragraph 27 and 28.  Paragraph 27 stated:

> Defendant agrees that if defendant, at any time after the
> signature of this agreement and execution of all required
> certifications by defendant, defendant's counsel, and an
> Assistant United States Attorney, knowingly violates or
> fails to perform any of defendant's obligations under this
> agreement ("a breach"), the USAO may declare this agreement
> breached.  All of defendant's obligations are material, a
> single breach of this agreement is sufficient for the USAO
> to declare a breach, and defendant shall not be deemed to
> have cured a breach without the express agreement of the
> USAO in writing.  If the USAO declares this agreement
> breached, and the Court finds such a breach to have
> occurred, then: (a) if defendant has previously entered a
> guilty plea pursuant to this agreement, defendant will not
> be able to withdraw the guilty plea, and (b) the USAO will
> be relieved of all its obligations under this agreement.

(Id. ¶ 27.)

Defendant and his counsel, with the aid of a Chinese
interpreter, reviewed and signed the plea agreement on May 25, 2015.
(Id. at 23-25.)  Defendant represented that he "had enough time to
review and consider this agreement" and had "carefully and thoroughly
discussed every part of it with [his] attorney."  (Id. at 23.)  He
signed that he "understood the terms of this agreement and []
voluntarily agreed to those terms."  (Id.)  His certification also
included the representation, "No one has threatened or forced me in
any way to enter into this agreement. . ." (Id.)

1        **C.   Defendant's Change of Plea Hearing[1]**

2        On May 29, 2015, with the aid of a Mandarin speaking

3   interpreter, the Court arraigned defendant on the FSI, and held a

4   plea hearing in compliance with all requirements set out by Rule

5   11(b) of the Federal Rules of Criminal Procedure. (Dkt. 124.)  The

6   Court advised defendant of the consequences of entering into a guilty

7   plea, including the collateral consequences.  The government set

8   forth the elements of the offenses and the statutory maximum

9   penalties.  Defendant, after being placed under oath, admitted to the

10  factual basis set forth in the plea agreement and read into the

11  record by the government.  Defendant acknowledged that he understood

12  the consequences of entering a guilty plea and had discussed the plea

13  agreement with his counsel.  He also stated that he was entering into

14  the plea voluntarily.  The Court accepted and entered defendant's

15  pleas of guilty to the three counts of the FSI, finding defendant's

16  pleas knowing and voluntary. (Dkt. 124.)

17       The Court, at the same time, also arraigned Chuang Feng Chen on

18  the Second Superseding Information, and after conducting a thorough

19  plea colloquy, accepted his plea of guilty and found it knowing and

20  voluntary.

21  **III. ARGUMENT**

22       **A.   Defendant Has No Basis Under <u>Maslenjak</u> To Withdraw His
             Guilty Plea**

23

24       Defendant argues that he should be allowed to withdraw his

25  guilty plea because the Supreme Court's decision in <u>Maslenjak</u> changes

26  _____

27       [1] The government has drafted this section based on its
    recollection of the change of plea colloquy and will supplement with
    references to the transcript once the transcript has been provided by
28  the court reporter.

                                    6

Ninth Circuit law as to § 1425(a). (Def.'s Mot. to Withdraw at 2, 5.)
In Maslenjak, the Supreme Court imposed a "causal relation" test
between a misrepresentation and the unlawful procurement of
naturalization. 137 S. Ct. 1918, 1925 (2017). However, defendant's
argument fails to recognize that prior to Maslenjak, Ninth Circuit
law already imposed a heightened materiality standard for false
statements in the procurement of naturalization. Maslenjak therefore
does not overrule precedent or provide defendant with a previously
unavailable argument to allow him to withdraw his plea. Defendant's
admissions in his guilty plea and at his plea colloquy -- that he had
committed the crimes of customs fraud and money laundering prior to
submission of his naturalization application, and knowingly failed to
disclose these crimes in his application -- would more than satisfy
the causal link requirement of Maslenjak.

       1.   **The Ninth Circuit Requires Marked Shift In Law To Allow Withdrawal Of A Guilty Plea**

After a court accepts a defendant's plea of guilty in compliance
with Rule 11 but before sentencing, the defendant must demonstrate a
"fair and just reason for withdrawal." Fed. R. Crim. P. 11(d)(2)(B).
Rule 11 ensures that there is "some finality at the time pleas are
accepted." United States v. Ensminger, 567 F.3d 587, 593 (9th Cir.
2009) (citation omitted). A defendant bears the burden of
establishing that withdrawal is warranted. United States v.
McTiernan, 546 F.3d 1160, 1167 (9th Cir. 2008). The decision to
allow a defendant to withdraw a plea is "solely within the discretion
of the district court." United States v. Showalter, 569 F.3d 1150,
1156-57 (9th Cir. 2009).

7

1   While the Ninth Circuit has described the "fair and just"

2   standard to be "generous," a "defendant is not permitted to withdraw

3   his guilty plea simply on a lark." McTiernan, 546 F.3d at 1167

4   (quotation marks and citation omitted). Fair and just reasons

5   include "inadequate Rule 11 plea colloquies, newly discovered

6   evidence, intervening circumstances or any other reason for

7   withdrawing the plea that did not exist when the defendant entered

8   his plea." Ensminger, 567 F.3d at 590–91 (citations omitted). "Once

9   a plea is accepted, permitting withdrawal is, as it ought to be, the

10  exception, not an automatic right." Id. at 593. For a development

11  in the law to constitute fair and just reason to withdraw a plea, the

12  development in the law "should provide defendant with a previously

13  unavailable ground sufficient to provide some material relief." Id.

14  at 594 (citing Ortega-Ascanio, 376 F.3d at 886.) It is not enough

15  for a defendant to "point to some court decision somewhere that

16  offered him hope of escaping conviction or otherwise caused him to

17  second-guess his prior decision to plead guilty." Id. at 592-93.

18      The Ninth Circuit -- on only one occasion -- has found that a

19  change in the law is an intervening circumstance that justifies

20  withdrawal of a plea. Ensminger, 567 F.3d at 591 (referring to the

21  Ninth Circuit's decision in United States v. Ortega-Ascanio, 376 F.3d

22  879 (9th Cir. 2004)). That is because there must be "[a] marked

23  shift in governing law that gives traction to a previously foreclosed

24  or unavailable argument" in order to "operate as a fair and just

25  reason to withdraw a guilty plea." Ensminger, 567 F.3d at 592. In

26  Ensminger, the Ninth Circuit refused to allow a defendant to withdraw

27  his plea where he argued that his changed circumstances were a

28

8

district court case in another district that upheld a constitutional
challenge to the crime to which he pled.  Id. at 593-94.  Finding
that the other district's case did not "overrule precedent" nor give
the defendant "a plausible ground for dismissal of his indictment
that was previously unavailable," the Ninth Circuit explained that it
did not want to "dilute even further the effectiveness and finality
of valid guilty pleas" by allowing the defendant to withdraw his plea
on the basis asserted.  Id.

In Ortega-Ascanio, the one instance in which the Ninth Circuit
found a change in law sufficient to justify withdrawal of a plea, the
defendant had pled guilty to illegally reentering the United States
following removal.  376 F.3d at 881.  The Immigration Naturalization
Service ("INS") deported Ortega-Ascanio in 1998, based on the fact
that, in 1989, he pled guilty to sexual battery in violation of
California Penal Code §243.4.  Id. at 882.  At the time of Ortega-
Ascanio's deportation hearing (1998), the Ninth Circuit had found
that the Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA") applied retroactively, preventing Ortega-Ascanio from
asserting that he was eligible for relief from deportation under
§ 212(c) of the Immigration and Nationality Act of 1952.  Id.  After
Ortega-Ascanio pled guilty but before sentencing, the Supreme Court
decided INS v. St. Cyr, 533 U.S. 289 (2001), which held that AEDPA
could not apply retroactively to bar § 212(c) relief to aliens who
were eligible for such relief at the time they pled guilty to the
offence.  Ortega-Ascanio, 376 F.3d at 882.  In light of St. Cyr, the
Ninth Circuit held that "Ortega-Ascanio demonstrated a fair and just
reason for withdrawing his plea, namely, an intervening Supreme Court

1  decision that overruled Circuit precedent and gave [Ortega-Ascanio] a
2  plausible ground for dismissal of his indictment." Id. at 887.

3          2.    Maslenjak Is Not A Marked Shift in Ninth Circuit Law

4       The circumstances in the present case are very different from
5  Ortega-Ascanio.  Maslenjak does not overrule Ninth Circuit precedent
6  or provide defendant with a previously unavailable argument.
7  Certiorari was granted in Maslenjak to resolve a circuit split on the
8  issue of whether making a false statement during the naturalization
9  proceeding resulted in a violation of 18 U.S.C. § 1425(a) regardless
10 of whether the false statement actually influenced the naturalization
11 decision.  Maslenjak, 137 S. Ct. at 1924 & n.1.  The Ninth Circuit
12 was aligned with other circuits that required some showing that a
13 misrepresentation mattered to the naturalization decision in a
14 prosecution under Section 1425.  United States v. Alferahin, 433 F.3d
15 1148, 1155 (9th Cir. 2006); United States v. Munyenyezi, 781 F.3d
16 532, 536 (1st Cir. 2015); United States v. Latchin, 554 F.3d 709, 713
17 (7th Cir. 2009).  On the other side was the Sixth Circuit (where the
18 case originated), which specifically did not require the government
19 to prove that a false statement was material or that the false
20 statement influenced the naturalization decision in order to
21 establish a violation of section 1425(a).  United States v.
22 Maslenjak, 821 F.3d 675, 685-86 (6th Cir. 2016) (overruled by
23 Maslenjak, 137 S. Ct. 1918).

24      In Maslenjak, the Supreme Court rejected the jury instruction
25 (approved by the Sixth Circuit) that the government could prevail so
26 long as the government "proved that one of the defendant's statements
27 was false -- even if the statement was not material and did not

28                                           10

1   influence the decision to approve her naturalization." _Maslenjak_,

2   137 S. Ct. at 1924.  (internal quotations and citation omitted).  The

3   Supreme Court found that not just any false statement could form the

4   basis for a conviction under section 1425(a).  Rather, the government

5   "must establish that an illegal act by the defendant played some role

6   in her acquisition of citizenship," meaning that a false statement

7   must be about facts that would have mattered to an immigration

8   official, because they would have justified denying naturalization or

9   would predictably have led to other facts warranting the result.  _Id._

10   at 1923.  In essence, _Maslenjak_ requires a "causal relation" between

11   the misrepresentation and the naturalization decision.  _See id._ at

12   1925.

13        It is well established in the Ninth Circuit that the materiality

14   element of § 1425(a) is a "heightened materiality requirement," which

15   includes the "requirement that the government produce evidence

16   sufficient to raise a fair inference that [the defendant] was

17   statutorily ineligible for permanent residence." _United States v._

18   _Alferahin_, 433 F.3d 1148, 1155 (9th Cir. 2006); _United States v._

19   _Puerta_, 982 F.2d 1297, 1303-04 (9th Cir. 1992).  The causal-link

20   requirement for a § 1425(a) conviction is therefore, at most, a small

21   change from the heightened materiality standard that the Ninth

22   Circuit required before _Maslenjak_ and which applied to defendant at

23   the time of his plea.  Any such change is far less than "[a] marked

24   shift in governing law that . . . may operate as a fair and just

25   reason to withdraw a guilty plea." _Ensminger_, 567 F.3d at 592.

26

27

28

11

3.    <u>Maslenjak Does Not Open Any New Arguments For
Defendant Given His Prior Admissions</u>

Furthermore, whether or not <u>Maslenjak</u> changed Ninth Circuit law, it does not offer defendant any basis to challenge his conviction. Applying <u>Maslenjak</u>'s causal-link requirement, defendant is guilty of Unlawful Procurement of Naturalization under 18 U.S.C. § 1425. Defendant admitted that he attempted to procure United States citizenship naturalization by making false statements about never committing a crime or offense for which he had not been arrested when he had actually committed two crimes.  (Plea Agreement ¶ 17.) Defendant admitted to committing the crimes prior to applying for naturalization and specifically admitted that he knew the false statements about not committing crimes "to be false when made." (<u>Id.</u>)  The crimes defendant had committed and pled to were Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h) and the Passing False Papers Through Customhouse, in violation of 18 U.S.C. § 545.  (<u>Id.</u>)  Money laundering and customs fraud exceeding $10,000 are aggravated felonies under the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(43)(D), (M)(i).  Aggravated felonies bar a defendant from establishing good moral character for naturalization. <u>See</u> 8 C.F.R. § 316.10(b)(2)(iv).

Under <u>Maslenjak</u>, the government may establish a causal relation in one of two ways; either by showing that the misrepresented facts were themselves disqualifying or through an investigation-based theory.  <u>See</u> 137 S. Ct. at 1928-29.  In this case, the true facts, had defendant honestly responded to the questions in his application for naturalization, were themselves disqualifying.  Elsewhere in defendant's plea agreement, he admitted that the customs fraud and

the money laundering each, separately, involved funds exceeding $10,000.  (Plea Agreement ¶ 17.)

While, as defendant notes, <u>Maslenjak</u> was concerned with the criminalization of false statements that have nothing to do with the procurement of naturalization, failure to disclose federal felonies is a far cry from failure to disclose a prior speeding violation. <u>Compare</u> <u>Maslenjak</u>, 137 S. Ct. at 1927.  The question on the naturalization application regarding whether the applicant had ever committed a crime or offense for which he had not been arrested is intended to disqualify people who have committed serious crimes that are per se disqualifying.  That is, this question is intended to disqualify people like defendant.

Since <u>Maslenjak</u> does not provide defendant with any basis to challenge his guilt, it certainly cannot constitute intervening circumstances that would allow him to withdraw his guilty plea.

**B.   The Record Rebuts Defendant's Claim That His Plea Was Not Knowing Or Intelligent**

Defendant also argues that his original plea was not knowing and intelligent.  The basis for his argument is twofold: first, that he did not know at the time of his naturalization application that his prior actions constituted crimes (Def.'s Mot. at 10.) and second, that, had he been correctly advised by his attorney that the law required him to know his prior acts were crimes at the time he committed them, he would not have pled guilty.  (<u>Id.</u>)  His motion states, "Although Mr. Chen was advised after his arrest that his acts were crimes, he did not know of their criminal nature when he applied for citizenship and thus did not ***knowingly*** make a false statement." (<u>Id.</u> at 11.) (emphasis in original).  Defendant then claims that had

13

he known the knowledge component to the crime at the time he pled guilty, he would not have pled.  (Id.)

However, the factual contention on which defendant's argument is based – that he did not know at the time he filled out his naturalization application that his prior acts constituted crimes – is squarely contradicted by his prior statements.  In his plea agreement, defendant agreed that: "defendant knowingly procured and attempted to procure, contrary to law, his United States citizenship naturalization, by making the following false material statement, which he knew to be false when made. . . ." (Ex. A, ¶ 17) (emphasis added).  Defendant acknowledged at his change of plea hearing that he had read the plea agreement and that he understood it.  Defendant further acknowledged that he had discussed the decision and consequences with his attorney, and that he was satisfied with his attorney.  Defendant also stated that his plea was knowing and voluntary.  "Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea."  United States v. Ross, 511 F.3d 1233, 1236 (9th Cir. 2008).

Both in his plea agreement and during his plea colloquy, defendant was advised of the elements of Unlawful Procurement of Citizenship, which included that "defendant knowingly made a misrepresentation on his naturalization application." (Plea Agreement ¶ 10.)  That element is not at all affected by Maslenjak, which addresses only whether that misrepresentation need be material or causally linked in some other way to defendant's procurement of naturalization -- the third element of the offense.  Maslenjak also

14

does not require that the defendant know that his misstatement have a causal link with the naturalization process, only that there be a causal link.  Thus, there is no basis for defendant to claim that <u>Maslenjak</u> rendered his plea unknowing or unintelligent.

Defendant was placed under oath before he made his statements at his plea colloquy.  The Court should not give credence to his current claim, as he seeks to be relieved of the consequences of his plea, that he did not know the facts he previously admitted.

## IV.   GOVERNMENT'S POSITIONS SHOULD DEFENDANT PERSIST WITH AND PREVAIL ON HIS MOTION

Should the defendant persist with the part of his motion that asserts that he did not know, at the time that he submitted his naturalization application, that he had committed the crimes of customs fraud and money laundering, the government requests that the Court declare the plea agreement breached.  Should the defendant persist in his motion and prevail in convincing the Court that he has a fair and just reason to withdraw his plea to only count three of the FSI, the Court should find that defendant withdrew his plea and triggered paragraph 25 of the plea agreement, "Result of Withdrawal of Guilty Plea."  The government also requests that the Court find, in the event defendant withdraws his plea to one count of the FSI, that the "package deal" has been violated and that the dispositions for defendant's co-defendant children, Chuang Feng Chen and Aixia Chen, be voidable at the government's discretion.

### A.   Defendant Breaches His Plea Agreement By Asserting Facts In His Motion That Contradict Facts Agreed To In The Plea Agreement

The Ninth Circuit has recognized that "a plea bargain agreement is contractual in nature and subject to contract law standards."

15

1    United States v. Carillo, 709 F.2d 35, 36 (9th Cir. 1983) (quoting

2    United States v. Krasn, 614 F.2d 1229, 1233 (9th Cir. 1980)).

3         As discussed in Part III.B, infra, in asserting that he did not

4    knowingly make a false statement in his naturalization application

5    because he did not know his acts were crimes at the time (Def.'s Mot.

6    at 11), defendant is directly contradicting facts he agreed to in the

7    plea agreement – namely, that he made a false statement "which he

8    knew to be false when made" (Plea Agreement ¶ 17 (final paragraph)).

9    The provisions of the plea agreement make it crystal clear that

10   disputing any agreed-upon fact is a breach.  Paragraph 3(b) lists one

11   of defendant's obligations as "Not contest facts agreed to in this

12   agreement."  Defendant agreed to the fact that he knew the statement

13   that he had never committed a crime or offense for which he had not

14   been arrested "to be false when made" in paragraph 17 of his plea

15   agreement.  Then, paragraph 27 explains that if defendant "knowingly

16   violates or fails to perform any of defendant's obligations under

17   this agreement, the USAO may declare this agreement breached."  (Plea

18   Agreement ¶ 27.)  To dispel any ambiguity, the paragraph continues

19   that "a single breach of this agreement is sufficient for the USAO to

20   declare breach."  (Id.)  Consistent with paragraph 27 of defendant's

21   plea agreement, the USAO is declaring defendant's plea agreement

22   breached should he not withdraw his motion.

23   **B.   If Defendant Withdraws His Plea, The Government Is Relieved
         Of All Obligations Under the Agreement, Including Its**
24   **     Agreements Under The Package Deal**

25        Should the Court find that the defendant is permitted to

26   withdraw his plea to Count Three and defendant chooses to withdraw

27   that plea, the government believes that paragraph 25 of the plea

28
                                    16

agreement is triggered, meaning that the government will be relieved of all of its obligations under the plea agreement.  In addition, defendant's withdrawal of his plea will be a rescission of the package deal, and the government will be able to void the dispositions with co-defendants Chuang Feng Chen and Aixia Chen.

Paragraph 25 of the plea agreement explains that if, after pleading guilty, "defendant seeks to withdraw and succeeds in withdrawing his guilty plea on <u>any</u> basis other than a claim and finding that entry into this plea agreement was involuntary," then the government would be "relieved of <u>all</u> of its obligations" under the plea agreement and may choose "to pursue <u>any</u> charge that was either dismissed or not filed as a result of this agreement." (<u>Id.</u> ¶ 25 (emphasis added).)

Defendant has made no argument and there is nothing on the record suggesting that defendant's entry into his plea agreement was <u>involuntary</u>.  Even defendant's argument that his plea was "neither knowingly or intelligently made" does not go to the voluntariness of the plea.  To the contrary, defendant certified that his entry into the plea was knowing and voluntary, both in his plea agreement and during his change of plea colloquy.

In his plea agreement, he certified "I understand the terms of this agreement, and I voluntarily agree to those terms."  (Plea Agreement at 24.)  At his plea colloquy, the defendant was advised of the consequences of his plea, including the nature of the charges and the maximum penalties.  Defendant confirmed that he had discussed the plea agreement with his attorney and was satisfied with the representation of his attorney.  Defendant also confirmed that he was

17

entering into the plea voluntarily and of his own free will.  At the end of the colloquy, the Court accepted defendant's pleas and found them knowing and voluntary.  On such a record, the Court should continue to find that defendant's plea agreement and pleas were knowingly and voluntarily made.  See United States v. Navarro-Botello, 912 F.2d 318 (9th Cir. 1990); United States v. Lo, 839 F.3d 777, 783-85 (9th Cir. 2016) (finding waiver of appeal knowing and voluntary based on "circumstances surrounding the signing and entry of the plea agreement" and that "defendant need not be aware of possible grounds of appeal".)

The government additionally believes that defendant's failure to enter pleas to all three counts of the FSI, as demanded by the plea agreement (Plea Agreement ¶ 3(a)), would constitute a breach of the plea agreement or at least grounds for rescission of the package deal.  Paragraph 2 of defendant's plea agreement (as well as paragraph 2 of Chuang Feng Chen's plea agreement) explains that the agreement is part of a package deal "tied to and conditioned on the disposition" of the charges against the co-defendants in the case.  (Id. ¶ 2; Chuang Feng Chen's Plea Agreement, ¶ 2.)  Consequently, even if the Court should find that defendant's withdrawal of guilty plea was permitted based on a finding that the previous entry of the plea was "involuntary," the package deal would be broken since the package disposition was conditioned on all three defendants completing their agreements with the government.  Should the Court find the package deal rescinded, the government's position would be that the agreements between the government and either or both co-

18

defendants Chuang Feng Chen and Aixia Chen would be voidable at the government's discretion.

**V.     CONCLUSION**

For the reasons set forth above, the Court should deny defendant's motion to withdraw his plea to Count Three of the FSI. Should the defendant persist in contesting any facts agreed to in his plea agreement, the government asks that the Court declare the plea agreement breached and the government relieved of its obligations. Should the defendant withdraw his plea and the Court find that the entry of the plea was voluntary, the government asks the Court to find paragraph 25 ("Result of Withdrawal of Guilty Plea") triggered and the package deal broken.  Should the defendant withdraw his plea and the Court find it based on involuntary entry into the plea agreement, the Court should still find the package deal broken and all agreements with the co-defendants voidable at the government's discretion.